IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ARSENE L. JACKSON,<br><br>    Plaintiff,<br><br>    vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Civ. No. 18-00117 HG-KJM |

**ORDER REVERSING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY AND REMANDING CASE FOR FURTHER PROCEEDINGS**

**INTRODUCTION**

Plaintiff Arsene L. Jackson ("Plaintiff" or "Jackson") seeks review under 42 U.S.C. § 405(g) of the Acting Social Security Commissioner's ("the Commissioner") denial of Jackson's application for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled, finding he could perform his past work as a security guard. But in so doing, the ALJ did not — as the law requires — "specifically identify the testimony" that she found not credible. The ALJ did not reference Plaintiff's potentially dispositive testimony about his need to take

1

frequent unscheduled breaks due to pain that interfered with his ability to satisfy job requirements.  *See, e.g.*, *Treichler v. Comm'r of Soc. Security Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) ("[W]e require the ALJ to 'specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines the testimony.'") (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (internal editorial marks omitted)).  This requirement "ensure[s] [the court's] appellate review is meaningful."  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)).  Without the ALJ identifying such testimony, the court is unable to conclude, as would be necessary to affirm the Commissioner's decision, that the ALJ "rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).

Accordingly, the court REVERSES the Commissioner's decision and REMANDS the matter for further evaluation.

## **PROCEDURAL HISTORY**

On March 24, 2014, Plaintiff filed applications for disability insurance and supplemental security income benefits.

(Administrative Record ("AR") at pp. 230-36, 237-45, ECF No. 15).

On May 6, 2014, the Social Security Administration denied Plaintiff's initial applications. (AR at pp. 87, 88).

On November 17, 2014, the Administration denied his request for reconsideration. (AR at pp. 130-32, 133-35).

Following the denial of Plaintiff's request for reconsideration, he sought a hearing before an ALJ. (AR at pp. 136-137).

On April 18, 2016, the ALJ conducted a hearing on Plaintiff's applications. (AR at pp. 28-54).

On July 18, 2016, the ALJ issued her written decision denying Plaintiff's applications. (AR at pp. 10-26).

Plaintiff sought review by the Appeals Council for the Administration. The Appeals Council denied further review on January 24, 2018, rendering the ALJ's decision as the final administrative decision by the Commissioner. (AR at pp. 1-7).

On March 26, 2018, Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying benefits. (Complaint for Review of Social Security Disability Insurance Determination, ECF No. 1).

On June 18, 2018, the Magistrate Judge issued a briefing schedule. (ECF No. 13).

On August 25, 2018, Plaintiff filed PLAINTIFF'S OPENING BRIEF. (ECF No. 16).

On October 15, 2018, the Commissioner filed DEFENDANT'S ANSWERING BRIEF. (ECF No. 17).

On October 31, 2018, Plaintiff filed PLAINTIFF'S REPLY BRIEF. (ECF No. 19).

On February 25, 2019, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner. (ECF No. 21).

## **STANDARD OF REVIEW**

A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner must be affirmed by the District Court if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).

## **BACKGROUND**

Plaintiff applied for social security benefits, with a protective filing date of March 17, 2014,[1] alleging that he became disabled beginning on May 17, 2012.[2] AR at pp. 13, 230, 237. He was born in 1958, and was 55 years old when he applied.

After separating from the Army in 1983, AR at p. 528, Plaintiff reported working in floor maintenance at an airport from 1989 to 1998, and as a security guard from 2001 to 2008. AR at pp. 297. He last worked from April 2011 until May or June of 2012 doing cleaning at the Aulani resort and Ala Moana shopping center. *Id.* at pp. 34, 297. He was homeless when he applied for benefits, and reported that at night he often sleeps on the beach in Waianae, although he would sometimes sleep in

---

[1] The written applications were dated March 24, 2014, but were given "protected filing dates" of March 17, 2014. *See, e.g.*, *Kitchen v. Colvin*, 2015 WL 2374244, at *2 n.6 (M.D. Pa. May 18, 2015)("Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.").

[2] The record reflects an earlier application for benefits, filed on November 1, 2012, AR at pp. 214, 218, which the Social Security Administration disapproved on April 30, 2013. AR at pp. 115, 119.

5

the garage of his ex-wife's family in Makaha. AR at pp. 39, 660. He would bathe and cook at a friend's house. AR at pp. 39. He has had alcohol and drug abuse problems, and was receiving assistance from the Department of Veteran's Affairs ("VA") with his health and homeless issues. *See, e.g.*, AR at pp. 50, 661, 708-09, 795.

The ALJ found, and the Commissioner does not dispute, that (1) Plaintiff met insured status requirements of the Social Security Act through December 31, 2015; (2) he has not engaged in substantial gainful activity since May 17, 2012; (3) he "has the following severe impairments: spine disorder, arthritis, dysfunction of major joints (left shoulder), and sciatica in his right leg;" and (4) the impairments "significantly limit [his] ability to do basic work activities." AR at p. 15.[3] The ALJ concluded, however, that Plaintiff has the residual functional capacity to perform light work (his past job as a security

---

[3] The most recent December 13, 2016 report from a primary care physician at the VA lists the following medical problems of Plaintiff that contribute to an "inability to pursue gainful employment in your usual field of work:" (1) "cervical spinal stenosis/degenerative disc disease;" (2) low back pain from "a prior injury with nerve damages that resulted in a right foot drop;" (3) left shoulder pain where "an MRI on 7/11/13 showed rotator cuff tears . . . as well as moderate biceps teninopathy and moderate AC joint arthritis;" and (4) left hip pain "which worsens with activity" as "an xray done on 11/25/15 suggests . . . possible femoroacetabular impingement and mild tendonitis." AR at p. 9.

guard) and thus is not "disabled" for purposes of receiving social security benefits.  AR at pp. 15-16, 20.

The ALJ's decision gave the following description of Plaintiff's testimony about leaving his last job in 2012:

> During the hearing, the claimant stated that he had been restricted to light duty at his work but that they could not accommodate a light duty restriction. As a result, the claimant lost his job. . . .  The claimant testified that he ceased working because no light duty jobs were available, indicating that he remained capable of light work.

AR at p. 17.  In this regard, Plaintiff indeed testified that he was on "light duty" when he stopped working, but that "I got on light duty because I got hurt."  AR at p. 34.  He testified that "I could work light duty, but they didn't want to accommodate me."  *Id.* at p. 35.

Plaintiff's testimony, however, then continued:  "But then another thing was a problem was every so often I had to break, you know, because, you know, my back was sore or my legs — my muscles . . . . Even when I was on light duty."  *Id.*  He testified that his need to take frequent unscheduled breaks "became an issue" with his employer, *id.,* and later that "these breaks that I probably would have to be taking all the time [would] probably be annoying not only to them, but [to] other work[ers]."  *Id.* at p. 44.  He explained that, when he left his job, "I just told them . . . I no longer can do this work if I

7

have to work under these conditions, and that's the way we left it." AR at p. 40.

The ALJ's decision did not acknowledge or consider Plaintiff's testimony regarding unscheduled breaks, even though a vocational expert testified that people who have to take "three or more unscheduled breaks during the day lasting about ten minutes" would *not* be able to perform Plaintiff's prior position as a security guard. AR at p. 53. This omission (and related testimony) is analyzed in the discussion section to follow, and ultimately is the basis for remanding the matter to the ALJ.

In denying Plaintiff's claim for benefits, the ALJ relied on testimony and evidence that Plaintiff "continued to remain active during the day despite his alleged pain," such as a VA report from February 2013 that "he walks one to two miles a day." AR at p. 17 (citing AR at p. 596). "In March 2014, the claimant reported to a treating source at the VA that he walks five miles a day." AR at p. 18 (citing AR at p. 538). "In October 2015, the claimant reported to Dr. Kinne that he was walking three to four miles a day." *Id.* (citing AR at p. 992). The ALJ also pointed to evidence that "[i]n January 2013, the claimant stated in a Function Report that he performs light yard work, cleans house, cares for two dogs, and fixes meals for

himself." *Id.* (citing AR at p. 267). "Despite losing his housing, the claimant testified that he does cleaning at a friend's house in exchange for being allowed to shower and use the kitchen for cooking." *Id.*; *see* AR at p. 39 (testimony). Likewise, as evidence that Plaintiff is capable of light work, the Commissioner points to a 2014 medical report that attributes Plaintiff's shoulder pain to "picking mangoes . . . with a long pole . . . for at least 30 mins." ECF No. 17 at p. 14 (citing AR at p. 911). That report also indicated that he was "using a saw to prune [a] mango tree," and "walk[s] daily [for] 30 mins" and "swim[s] at Makaha beach." AR at p. 909.

The ALJ found certain "inconsistencies" in Plaintiff's medical records that led her to discount and give "little weight" to treating physicians' opinions about Plaintiff's functioning and work capabilities. *See, e.g.*, AR at p. 19 (ALJ reasoning that "[b]oth of these [treating physician] opinions were work excuses for a few days while further observation occurred and do not represent earnest assessments of the claimant's remaining abilities. Furthermore, these opinions are not well supported."); *id.* ("[These opinions] were also not earnest assessments of the claimant's abilities or well supported."); *id.* ("Thus, Dr. Kinne's June 2014 opinions were made without the benefit of evidence at the hearing level and

9

are not consistent with the overall record.  For these reasons,
Dr. Kinne's June 2014 opinions are entitle[d] to no more than
some weight."). Instead, the ALJ relied on state agency
consultant reports from May and November 2014 that opined that
Plaintiff could perform light work, giving "[g]reat weight to
these opinions because they are generally consistent with the
overall record.").  *Id.* at p. 20.

## ANALYSIS

I.  **Applicable Law**

   A.  **Disability Determinations**

The Social Security Administration has implemented
regulations establishing when a person is disabled so as to be
entitled to benefits under the Social Security Act, 20 C.F.R.
§ 404.1520; 42 U.S.C. § 423.  The regulations establish the
following five-step sequential evaluation process to determine
if a claimant is disabled:

> (1) Has the claimant been engaged in substantial
> gainful activity?  If so, the claimant is not
> disabled.  If not, proceed to step two.
>
> (2) Has the claimant's alleged impairment been
> sufficiently severe to limit his ability to work?  If
> not, the claimant is not disabled.  If so, proceed to
> step three.
>
> (3) Does the claimant's impairment, or combination of
> impairments, meet or equal an impairment listed in 20
> C.F.R. Part 404, Subpart P, Appendix 1?  If so, the
> claimant is disabled.  If not, proceed to step four.

> (4) Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. § 404.1520).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At both steps four and five, the ALJ may consider testimony from an impartial Vocational Expert ("VE") to determine whether an applicant can perform his or her past work, or to determine whether he or she can perform other jobs in the national economy. *See, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) ("The [Commissioner] can meet this burden [at step five] by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations."); *Wagner v. Astrue*, 499 F.3d 842, 854 (8th Cir. 2007) (citing several circuits' opinions for the proposition that "the ALJ may rely on the testimony of a vocational expert in making the necessary findings at step four") (citations omitted); *Hawkins v. Colvin*,

2014 WL 119259, at *10 (E.D. Va. Jan. 13, 2014) ("[T]he regulations were amended in 2003 to allow the ALJ to rely on the testimony of a vocational expert at step four of the sequential analysis.") (citing 20 C.F.R. § 404.1560(b)(2) (2003)).

**B.    Credibility and Pain Determinations**

Courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1098). "The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony not credible." *Treichler*, 775 F.3d at 1102 (citing 42 U.S.C. § 423(d)(5)(A)).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell*, 947 F.2d at 344).

"Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler*, 775 F.3d at 1102 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "This is

12

not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)).

That is, "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citations omitted). And

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Brown-Hunter*, 80 F.3d at 489. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

## II. The Administrative Law Judge Erred in Finding Plaintiff Could Perform His Past Work, Without Mentioning His Testimony Regarding How His Symptoms Affected Job Performance

There is no dispute regarding the first three steps of the analysis: First, Plaintiff has not been engaged in substantial gainful activity since May 17, 2012. AR at pp. 15, 329, 343. Second, he has impairments that are sufficiently severe to limit his ability to work (spine disorder, arthritis, dysfunction of major joints, sciatica in right leg). AR at pp. 15, 37-38. And third, his impairments do not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that he would qualify as disabled at step three. AR at p. 1.

The controversy concerns step four. Plaintiff contends that the ALJ erred in finding he had the residual functional capacity to perform his past work as a security guard. *See* AR at p. 20 (setting forth ALJ's findings that "The claimant is capable of performing past relevant work as a Security Guard. . . . The vocational expert opined that a person with the above residual functional capacity could perform the claimant's past relevant work as a Security Guard."). Specifically, Plaintiff contends that the ALJ erred in rejecting, or ignoring, his testimony regarding his need to take frequent unscheduled breaks — testimony which, if accepted, could have rendered him disabled and unable to perform his past work or similar light duty jobs —

without any discussion or analysis.  *See, e.g.*, Social Security Ruling 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017)(explaining that "we instruct our adjudicators to consider all of the evidence in an individual's record . . . [to] determine how symptoms limit ability to perform work-related activities").

During the hearing, Plaintiff indeed testified that he had to take frequent unscheduled breaks because of pain, and that such a need interfered with his prior employment (even while on "light duty").  Specifically, he testified as follows:

> A: (Plaintiff) . . . .  and I guess they didn't communicate that I was on light duty, and I couldn't work from that point on, because they didn't want to accommodate me.  And then —
>
> Q: (ALJ)  But you could work light duty, you just couldn't —
>
> A:   I could work light duty, but they didn't want to accommodate me.  *But then another thing was a problem was every so often I had to break,* you know, because, you know, my back was sore or my legs — my muscles —
>
> Q:   Even when you were on light duty?
>
> A:   Yes.  Even when I was on light duty, I would have ruining [ph] muscle spasms, you know, even from sitting too long, standing too long or walking too long.
>
> Q:   So even before you stopped working —
>
> A:   — I was having these problems.
>
> Q:   — you were having these problems.
>
> A:   Yes.

> Q: *And you needed to take more breaks than what was regularly scheduled?*
>
> A: *Right. Right. Because they'd walk around, they'd see me sitting down, you know, that became an issue.*
>
> Q: Un-huh. But no one said anything to you?
>
> A: It became an issue, but they knew I had physical problems.

AR at p. 35 (emphases added).

Jackson later testified similarly:

> Q: (ALJ): Even . . . with the light tidying, is it hard on you, painful? Are there some days when you can't help?
> . . . .
> A: . . . usually, you know, if I overdo it, I usually pay for it the next day and the day after that . . . . And I can understand that in the private sector as far as getting a job, you know, I mean, *you're under time and they want you to be working, you know, these breaks that I probably would have to be taking all the time [would] probably be annoying not only to them, but [to] other work[ers], you know.*

AR at p. 44 (emphasis added).

Given that testimony, the ALJ asked the VE (at steps four and five of the analysis) the following questions, with the following answers:

> Q: (ALJ): So say that because of the pain that [Jackson] has, he has to take three or more unscheduled breaks during the day lasting about 10 minutes. Would that person be able to perform those three [light exertional jobs] that you listed [security guard, counter attendant, and mail clerk]?
>
> A: (VE): No, Your Honor.

16

> Q: Would he be able to perform [his past] security guard position?
>
> A: No.

AR at p. 53. That is, that person would be "disabled" for social security benefit purposes. And so, if the ALJ had credited Jackson's testimony, he may well have been disabled according to the VE, an opinion which is consistent with case law. *See, e.g.*, *Lester*, 81 F.3d at 833 ("In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a *sustained* basis.'") (quoting 20 C.F.R. § 404.1512(a) (emphasis in *Lester*); *Reddick*, 157 F.3d at 724 ("Social Security regulations define residual functional capacity as the 'maximum degree to which the individual retains the capacity for *sustained* performance of the physical-mental requirements of jobs.'") (emphasis in original) (citing 20 C.F.R. 404, Subpt. P., App. 2 § 200.00(c)); *Lewis v. Apfel*, 236 F.3d 503, 516 (9th Cir. 2001) ("The ALJ must inquire whether the claimant has 'residual functional capacity for work activity *on a regular and continuing basis*.' . . . . Occasional symptom-free periods — and even the sporadic ability to work — are not inconsistent with disability.'") (citations omitted and emphasis added).

At this step, the ALJ made the following finding:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these [pain] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]

AR at p. 17.[4] The ALJ then rejected his contentions, reasoning as follows: "In terms of the claimant's physical impairments, the overall record indicates that he is not as limited as alleged. The claimant testified that he ceased working because no light duty jobs were available, indicating that he remained capable of light work." *Id.*

The ALJ, however, did not even mention Plaintiff's testimony about how his symptoms and pain led to a need to take frequent unscheduled breaks — again, testimony that if credited could have rendered him disabled when considering the hypotheticals proffered to the VE. The ALJ's failure to "specifically identify the testimony" that she found not credible is reversible error. *See, e.g.*, *Brown-Hunter*, 806 F.3d

---

[4] The ALJ's finding is very similar to the "boilerplate" that the Ninth Circuit rejected in *Treichler* as insufficient. *See* 775 F.3d at 1102-03 (observing that "the [ALJ's] single general statement that 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment,'" is "routinely include[d] [by ALJs] in their written findings as an introduction to the ALJ's credibility determination.").

18

at 493 ("'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'") (quoting *Reddick*, 157 F.3d at 722); *Treichler*, 775 F.3d at 1102 ("[T]o ensure our appellate review is meaningful, we require the ALJ to 'specifically identify the testimony from a claimant she or he finds not to be credible[.]'") (quoting *Holohan*, 246 F.3d at 1208) (brackets omitted)).[5]

On review, it is not possible without speculating to determine why the ALJ discredited Plaintiff's testimony. She may have found this part of Plaintiff's testimony vague or insufficient to fulfill the conditions posed to the VE (i.e., he did not establish that he would have "three or more unscheduled breaks . . . lasting about 10 minutes"). The ALJ may have

---

[5] In the Answering Brief, the Commissioner argues that testimony regarding the need for frequent breaks was not "symptom" or pain testimony that needs to be specifically mentioned and rejected by clear and convincing evidence under case law such as *Treichler*, 775 F.3d at 1102, and *Brown-Hunter*, 80 F.3d at 489. *See* ECF No. 17 at 10. The court, however, disagrees. In context, Plaintiff was testifying about his subjective pain and his symptoms, and how they interfered with his work performance. The ALJ may have found the testimony to be insufficient, but because she did not mention it — and because it is potentially dispositive when considering the VE's opinions — the court cannot perform a meaningful review. *See Brown-Hunter*, 80 F.3d at 489 ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible . . .").

disbelieved Plaintiff's symptom and pain testimony as a whole. But because the ALJ did not even acknowledge the testimony, much less make findings, the Court is left to speculate. The ALJ's omission requires remand. *See, e.g.*, *Brown-Hunter*, 806 F.3d at 493 ("A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'") (quoting *Bunnell*, 947 F.2d at 345-46). This was reversible error, especially considering the Commissioner's burden at this stage to provide "clear and convincing" reasons for rejecting Plaintiff's testimony. *See Trevizo*, 871 F.3d at 678.

## CONCLUSION

For the reasons set forth above, the Court REMANDS the case for further proceedings on an open record. The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 18, 2019.

Helen Gillmor
United States District Judge

*Jackson v. Berryhill*, Civ. No. 18-00117 HG-KJM, Order Reversing Decision of Commissioner of Social Security and Remanding Case for Further Proceedings